# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| **WESCO INSURANCE COMPANY,** <br> Plaintiff, <br><br> v. <br><br> **M.O.S. EXPRESS, INC.,** *et al.*, <br> Defendants. | ) <br> ) <br> ) <br> ) CIVIL ACTION NO. 2:21-00374-KD-N <br> ) <br> ) <br> ) |

## REPORT AND RECOMMENDATION

This civil action is before the Court on the "Motion to Dismiss Declaratory Judgment Petition and First Amended Petition" (Doc. 11) filed October 6, 2021, by Defendant Abbie Burrell, who is being sued in her capacity as mother and next friend of decedent Joshua Burrell.[1] The assigned District Judge has referred said motion to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b); (10/7/2021 electronic reference). In accordance with the Court's briefing schedule (Doc. 13), Plaintiff Wesco Insurance Company timely filed a response (Doc. 15) in opposition to the motion, and Burrell timely filed a reply (Doc. 17) to the response. The motion is now under submission. Upon due consideration, the undersigned will recommend that Burrell's motion be **DENIED**.

## I. *Background*

Wesco initiated this action by filing a complaint for a declaratory judgment with the Court on August 25, 2021. *See* (Doc. 1); Fed. R. Civ. P. 3. On September 10,

---

[1] The undersigned will hereinafter refer to Abbie Burrell as "Burrell," and will refer to Joshua Burrell as "Joshua."

2021, Wesco filed its first amended complaint (Doc. 6),[2] which was properly filed as a matter of course under Federal Rule of Civil Procedure 15(a)(1)(B) and is currently the operative complaint in this action.[3] The first amended complaint seeks a declaration of rights as to Wesco's duty to defend and indemnify Defendants M.O.S. Express, Inc. and Michael Dewayne Fudge under a Commercial Automobile insurance policy (policy no. WMC1415581) (hereinafter, "the Policy") in a civil action brought in the Circuit Court of Marengo County, Alabama (Case No. CV-2020-900011.00), by Burrell against M.O.S. and Fudge (hereinafter, "the State Court Action").[4]

---

[2] Wesco incorrectly labels its complaints as "petitions" for declaratory judgment. *See* 28 U.S.C. § 2201(a) (action for declaratory judgment may be brought in "any court of the United States, upon the filing of an *appropriate pleading*" (emphasis added)). Fed. R. Civ. P. 3 ("A civil action is commenced by filing a *complaint* with the court." (emphasis added)); Fed. R. Civ. P. 7(a) (omitting "petition" from list of "pleadings [that] are allowed" in civil actions).

[3] See *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (per curiam) ("As a general matter, '[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'" (quoting *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006) (citation and quotation omitted))); *Fritz v. Standard Sec. Life Ins. Co. of New York*, 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint.").

[4] "The Declaratory Judgment Act does not, of itself, confer jurisdiction upon the federal courts … Rather, a suit brought under the Act must state some independent source of jurisdiction." *FEC v. Reform Party of U.S.*, 479 F.3d 1302, 1307 n.5 (11th Cir. 2007) (per curiam) (citing *Borden v. Katzman*, 881 F.2d 1035, 1037 (11th Cir. 1989)). However, the first amended complaint invokes, and adequately alleges facts demonstrating, jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a).

Plaintiff Wesco and Defendant M.O.S., both corporations, are deemed citizens of New York and Texas, respectively, because each is alleged to both have been incorporated under its respective state's law and have its principal place of business there. *See* (Doc. 6 ¶¶ 2-3, PageID.48); 28 U.S.C. § 1332(c)(1). Defendant Fudge, a

Per the operative complaint's allegations,[5] Wesco issued the Policy to M.O.S. for the policy period November 5, 2017, to November 5, 2018. The Policy includes a limit of $1,000,000 for each accident. Fudge was identified as an approved driver under the Policy. On February 2, 2018, Joshua died in an automobile accident involving a commercial vehicle owned by M.O.S. and driven by Fudge. Fudge and M.O.S. notified Wesco of the accident on February 3, 2018, and Wesco acknowledged receipt of notice of the claim two days later. On March 2, 2018, Wesco wrote to Fudge and M.O.S., and in follow-up to a telephone call specifically requested that Fudge immediately notify Wesco if he or M.O.S. was served with a lawsuit or received any legal correspondence pertaining to the accident. On October 25, 2019, Wesco wrote Fudge and M.O.S. advising that it had reason to believe they may shortly be served with suit papers arising out of the accident, and reminding them to immediately notify Wesco and forward copies of any suit papers received. (Doc. 6 ¶¶ 9-16, PageID.49-50).

Burrell filed the State Court Action on January 30, 2020. After neither Fudge nor M.O.S. answered the complaint or otherwise appeared, on August 17, 2020,

---

natural person, is alleged to be a "citizen" of Texas. *See* (Doc. 6 ¶ 4, PageID.48); *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994) ("Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person."). Finally, Defendant Burrell is deemed a citizen of Alabama because the decedent whose estate she represents, Joshua, is alleged to have been a "citizen" of Alabama at the time of his death. *See* (Doc. 6 ¶ 5, PageID.48-49); 28 U.S.C. § 1332(c)(2). Thus, the first amended complaint adequately alleges that no defendant shares the citizenship of Wesco. Wesco also sufficiently alleges that the amount in controversy exceeds $75,000, exclusive of interests and costs.

[5] "In deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, a court must "accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1262 (11th Cir. 2015).

Burrell moved the state court for entry of default against them, asserting that both had been served with process on June 9, 2020. On March 24, 2021, the state court entered a default judgment against M.O.S. in the amount of $750,000. Neither M.O.S. nor Fudge notified Wesco of the filing of the State Court Action or the entry of the default judgment. The first time Wesco received notice of either was when it received a letter from Burrell's attorney on August 20, 2021, demanding that it satisfy the default judgment.[6] Wesco is now currently providing a defense to M.O.S. and Fudge in the State Court Action under a reservation of rights. (Doc. 6, ¶¶ 17-29, PageID.50-51). On October 18, 2021, M.O.S. and Fudge, through counsel, moved the state court to set aside the default judgment. (*See* Doc. 15-1).[7]

In this action, Wesco seeks a judgment declaring that it owes no coverage under the Policy for the State Court Action because M.O.S. and Fudge failed to comply with their duty under the Policy to provide Wesco with notice of that lawsuit. To date, M.O.S. and Fudge have not appeared in this action; on November 30, 2021, the Court extended Wesco's deadline to serve those defendants to January 7, 2022. *See* (Doc. 22); Fed. R. Civ. P. 4(m).

---

[6] *See Wiggins v. State Farm Fire & Cas. Co.*, 686 So. 2d 218, 220 (Ala. 1996) ("The injured party … can bring an action against the insurer only after he has recovered a judgment against the insured and only if the insured was covered against the loss or damage at the time the injured party's right of action arose against the insured tort-feasor." (quotation omitted)).

[7] "Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the [motion to dismiss] stage." *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 n.4 (11th Cir. 2015).

## II.   *Analysis*

### a.   **MCS-90 Endorsement**

Burrell first argues that Wesco's complaint for declaratory judgment is due to be dismissed for failure to present an "actual controversy" as required by 28 U.S.C. § 2201, because the Policy contains a Form MCS-90 endorsement (Doc. 11-1, PageID.189-191)[8] that obligates Wesco to cover M.O.S. for up to $750,000, the exact amount of the default judgment Burrell seeks to have Wesco cover, regardless of any other policy condition. As Burrell reasons, it would therefore be "meaningless" to determine the parties other rights and obligations under the Policy where the MCS-90 endorsement guarantees payment of the default judgment regardless.[9] In response, Wesco argues that this action presents an actual controversy because its other duties under the Policy must be determined before the MCS-90 endorsement applies, and also because the endorsement has no impact on whether Wesco owes its insured a duty to defend. Burrell makes no attempt to rebut these arguments in reply, and the undersigned agrees with Wesco on both points.

---

[8] Burrell has attached a copy of the Policy as an exhibit to her motion to dismiss. (*See* Doc. 11-1). While Wesco did not attach a copy of the Policy to its pleadings, "[i]n ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). The Policy is certainly central to Wesco's claims, and Wesco has not disputed the authenticity of Burrell's exhibit.

[9] The full title of the MCS-90 endorsement is "Endorsement for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980." *See* 49 C.F.R. § 387.7(d)(1); *Canal Ins. Co. v. Distribution Servs., Inc.*, 320 F.3d 488, 488-89 (4th Cir. 2003).

> The Motor Carrier Act of 1980 ("MCA"), in addition to deregulating the trucking industry and reducing barriers to entry, addressed safety issues and financial responsibility for trucking accidents. *See Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 873 (10th Cir. 2009). In particular, Congress addressed "the use by motor carriers of leased or borrowed vehicles to avoid financial responsibility for accidents that occurred while goods were being transported in interstate commerce." *Canal Ins. Co. v. Distribution Servs., Inc.*, 320 F.3d 488, 489 (4th Cir. 2003). To that end, the MCA imposes a minimum insurance requirement on each motor carrier registered to engage in interstate commerce. *Id.*; *see also* 49 U.S.C. § 31139(b) (stating that the MCA's minimum financial obligations apply to "motor carriers"). Motor carriers transporting non-hazardous property must demonstrate financial responsibility of at least $750,000. 49 C.F.R. § 387.9. They must further establish proof of that responsibility in one of three ways: "(1) by an MCS–90 endorsement, (2) by a surety bond, or (3) by self-insurance." *Yeates*, 584 F.3d at 874; *see also* 49 C.F.R. § 387.7(d)(1)-(3).

*Nat'l Specialty Ins. Co. v. Martin-Vegue*, 644 F. App'x 900, 906 (11th Cir. 2016) (per curiam) (unpublished). *See also Waters v. Miller*, 564 F.3d 1355, 1357 (11th Cir. 2009) ("Under the Motor Carrier Act of 1980, 49 U.S.C. § 10101 *et seq.*, and the regulations promulgated thereunder, certain interstate motor carriers must obtain an insurance policy containing an MCS–90 endorsement 'providing that the insurer will pay within policy limits any judgment recovered against the insured motor carrier for liability resulting from the carrier's negligence[.]' " (quoting *Ill. Cent. R.R. Co. v. Dupont*, 326 F.3d 665, 666 (5th Cir. 2003))). " 'The MCS–90 provides a broad guaranty that the insurer will pay certain judgments incurred by the insured regardless of whether the motor vehicle involved is specifically described in the policy or whether the loss was otherwise excluded by the terms of the policy.' " *Miller v.*

*Harco Nat. Ins. Co.*, 241 F.3d 1331, 1333 (11th Cir. 2001) (per curiam) (quoting *Century Indem. Co. v. Carlson*, 133 F.3d 591, 594 (8th Cir. 1998)).

As the *en banc* Tenth Circuit Court of Appeals has explained, "the insurer's obligation under the MCS–90 endorsement [i]s one of a surety rather than a modification of the underlying policy. The endorsement is a safety net in the event other insurance is lacking. Under this reasoning, an MCS–90 insurer's duty to pay a judgment arises not from any insurance obligation, but from the endorsement's language *guaranteeing* a source of recovery in the event the motor carrier negligently injures a member of the public on the highways." *Yeates*, 584 F.3d at 878 (citations and footnote omitted). *Accord Martin-Vegue*, 644 F. App'x at 906. However, a MCS-90 endorsement does not make the rest of an insurance policy meaningless or superfluous, as the MCS-90 "surety obligation … is triggered only when (1) the underlying insurance policy to which the endorsement is attached does not otherwise provide coverage, *and* (2) either no other insurer is available to satisfy the judgment against the motor carrier, or the motor carrier's insurance coverage is insufficient to satisfy the federally-prescribed minimum levels of financial responsibility." *Yeates*, 584 F.3d at 878. *Accord Martin-Vegue*, 644 F. App'x at 906-07.

Moreover, "the MCS–90 endorsement operates only to protect the public and 'does not alter the relationship between the insured and the insurer as otherwise provided in the policy.'" *Yeates*, 584 F.3d at 878–79 (quoting *Distrib. Servs., Inc.*, 320 F.3d at 493). "Notably, the endorsement and the underlying insurance policy, while linked, impose different obligations based on different requirements. An insurance

policy typically imposes an obligation to indemnify (i.e., pay without reimbursement) on the insurance company based on the policy's coverage of a particular risk. *Id.* at 882. On the other hand,

> the MCS–90 endorsement is "not an ordinary insurance provision to protect the insured. The endorsement does not extinguish the debt of the insured." *Travelers Indem. Co. of Ill. v. W. Am. Specialized Transp. Servs., Inc.,* 409 F.3d 256, 260 (5th Cir. 2005). The MCS–90 endorsement instead grants the insurer the right to seek reimbursement from the insured party for "any payment made by the company on account of any accident, claim or suit involving a breach of the terms of the policy, and for any payment that [the insurance company] would not have been obligated to make under the provisions of the policy except for the agreement contained herein."49 C.F.R. § 387.15, Illus. I; *see also W. Am. Specialized Transp. Servs., Inc.,* 409 F.3d at 260 ("[The endorsement] transfers the right to receive the insured's debt obligation from the judgment creditor to the insurer."). Such a right of reimbursement is triggered only if there is no coverage under the insurer's policy.

*Id.* at 884. *See also id.* at 879 ("The peculiar nature of the MCS–90 endorsement grants the judgment creditor the right to demand payment directly from the insurer, and simultaneously grants the insurer the right to demand reimbursement from the insured. A motor carrier may be required to reimburse the MCS–90 insurer for any payout the insurer would not otherwise have been obligated to make. The endorsement thereby presents neither a windfall for the motor carrier, nor does it alter the motor carrier's coverage under its other insurance policies." (citation and quotation omitted)). Thus, even if Burrell is correct that she is guaranteed to receive the full $750,000 default judgment under either the underlying terms of the Policy or the MCS–90 endorsement, determination of the source of that obligation still

presents an actual controversy because such a determination will determine, at the very least, Wesco's right to seek reimbursement from M.O.S. and/or Fudge for having to pay the judgment.

Additionally, "the MCS–90 does not impose a duty to defend on the insurer where such a duty would not have otherwise existed[,]" and "neither does it negate such a duty that might fall upon the insurer under the Policy as interpreted according to state law." *T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 677 (5th Cir. 2001). *See also Yeates*, 584 F.3d at 883 ("liability [under MCS-90], by itself, imparts no duty to defend … to the insurance company"). Given that Wesco is now providing a defense to M.O.S. and Fudge in the State Court Action under a reservation of rights, and has moved to set aside the default judgment there, *cf. Progress Indus., Inc. v. Wilson*, 52 So. 3d 500, 506 (Ala. 2010) (Alabama "policy favors the determination of cases on the merits, disfavoring default judgments" (quotation omitted)), the issue of whether Wesco owes a duty to defend in the State Court Action also presents an actual controversy appropriate for declaratory judgment.

### b. Discretionary Dismissal

Second, and lastly, Burrell argues that this action should be dismissed under the Court's discretionary authority to decline to entertain declaratory judgment actions. The undersigned disagrees.

"The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides in relevant part that in 'a case of actual controversy … any court of the United States … may declare the rights and legal relations of any interested party seeking such declaration.' "

*Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc.*, 12 F.4th 1278, 1281 (11th Cir. 2021). "As the permissive text suggests, a district court has discretion in deciding whether to entertain an action under the Act." *Id.* (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282-83, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995)). In other words,

> [t]he Declaratory Judgment Act is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Wilton*, 515 U.S. at 287, 115 S. Ct. 2137 (citations omitted). It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so. *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942).

*Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (per curiam).

> In *Ameritas*, [the Eleventh Circuit Court of Appeals] set out the following non-exclusive guideposts for district courts to consider in deciding whether to adjudicate, dismiss, or stay a declaratory judgment action under § 2201(a):
>
> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
>
> (2) whether the judgment in the federal declaratory action would settle the controversy;
>
> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
>
> (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;
>
> (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*S. Heating & Cooling*, 12 F.4th at 1282–83 (quoting *Ameritas*, 411 F.3d at 1331). "[T]he guideposts … provided in *Ameritas* are not exhaustive; not all are required; and no one is controlling." *Id.* at 1286 (citing *Ameritas*, 411 F.3d at 1331).[10]

As an initial matter, Wesco argues that the *Ameritas* guideposts are inapplicable because there is no parallel state court proceeding for the Court to defer to – i.e., another suit that " 'is pending in a state court presenting the same issues, not governed by federal law, between the same parties.' " *Ameritas*, 411 F.3d at 1330 (quoting *Brillhart,* 316 U.S. at 495). However, as Burrell correctly points out, the Eleventh Circuit has recently made clear "that the existence of a parallel proceeding is not a prerequisite to a district court's refusal to entertain an action under § 2201(a)[,]" and "a district court may exercise its discretion and decline to adjudicate a claim under the Declaratory Judgment Act even in the absence of parallel

---

[10] "Indeed, district courts may sometimes dismiss declaratory judgment actions without considering any of the *Ameritas* guideposts." *S. Heating & Cooling*, 12 F.4th at 1286.

proceedings." *S. Heating & Cooling*, 12 F.4th at 1284-85.[11] The Eleventh Circuit has also expressly declined to add "a discrete, parallel-proceeding factor" to the *Ameritas* guideposts. *S. Heating & Cooling*, 12 F.4th at 1285. Rather, "[w]hen relevant, the similarity between concurrent proceedings is a consideration of significant weight[,]" and "[a] district court takes into account the similarity between any concurrent proceedings in its totality-of-the-circumstances analysis under *Ameritas*." *Id.*

That said, the undersigned agrees with Wesco that discretionary dismissal of this declaratory judgment is not warranted. As an initial matter, though, the undersigned observes that much of Burrell's arguments as to why the Court should decline to hear this case are animated by the view that Wesco seeks to have this Court declare the default judgment in the State Court Action void for improper service of process. This view is understandable, as the first amended complaint contains allegations that "M.O.S. and Mr. Fudge were not properly served with the summons and complaint under Alabama law[,]" and that "the default judgment upon which … Burrell is attempting to collect is a void judgment because the summons

---

[11] *Accord First Mercury Ins. Co. v. Excellent Computing Distribs., Inc.*, 648 F. App'x 861, 866 (11th Cir. 2016) (per curiam) (unpublished) ("Although in *Ameritas*, [the Eleventh Circuit] reviewed the district court's discretionary dismissal of a federal declaratory judgment action in the face of a parallel state proceeding—one involving substantially the same parties and substantially the same issues—[the Eleventh Circuit] ha[s] never held that the *Ameritas* factors apply only when reviewing parallel actions. Indeed, nothing in the Declaratory Judgment Act suggests that a district court's discretionary authority exists only when a pending state proceeding shares substantially the same parties and issues. Rather, the district court must weigh all relevant factors … , even [if] the state and federal actions [are] not parallel." (footnote omitted)).

and complaint were not served in compliance with Alabama law." (Doc. 6 ¶¶ 23, 42, PageID.51, 53).

However, in its response to the present motion, Wesco squarely disclaims any such reading of the amended complaint as "fundamentally flawed," asserting: "To be crystal clear, Wesco's Amended Complaint does not seek any such declaration as to the default judgment entered in the Underlying Action. Instead, all Wesco's Amended Complaint seeks is a declaration regarding insurance coverage under the Policy." (Doc. 15, PageID.237. *See also id.*, PageID.241-242 ("Wesco has no intention of requesting this Court determine the validity of the default judgment entered in the Underlying Action. In fact, this issue is presently being litigated in the Underlying Action, and Wesco has no intention of inserting this issue, which is properly before the Circuit Court of Marengo County, into the present action.")). The undersigned accepts Wesco's in-brief representations, made under Federal Rule of Civil Procedure 11, that it is not attempting to challenge in this action either the propriety of service of process or the validity of the default judgment in the State Court Action, and analyzes the *Ameritas* guideposts with that understanding in mind.

As interpretation of the Policy—except for the MCS-90 endorsement,[12] the validity of which Wesco is not currently challenging—appears to be controlled by state law, *Ameritas* guidepost 9 weighs in favor of declining to entertain this action. *Ameritas* guidepost 1 also weighs in that favor, though any interest of the State of Alabama in having the issues raised in this action decided in its state courts is

---

[12] "Federal law controls the interpretation and operation of the MCS–90." *Martin-Vegue*, 644 F. App'x at 906 (citing *Distrib. Servs., Inc.*, 320 F.3d at 492).

minimal. The issues involve do not seem to be novel or complex, and this Court routinely applies state law in diversity cases such as this one. And the weight guideposts 1 and 9 provide in favor of declining to hear this action is solidly outweighed by that provided by other *Ameritas* guideposts in favor of continuing to entertain this action.

A declaratory judgment in this action would settle the controversy of what coverage is owed under the Policy for the subject accident, and would therefore also serve a useful purpose in clarifying the legal relations among Wesco, its insureds, and Burrell (*Ameritas* guideposts 2 & 3). As explained previously, even if the MCS–90 endorsement may ultimately obligate Wesco to pay Burrell for the subject accident, the issue of whether coverage is otherwise available under the Policy, including Wesco's duty to defend in the State Court Action, must still be determined. Use of this action would not increase friction between this federal court and state courts, or improperly encroach on state jurisdiction (*Ameritas* guidepost 5), since the issues raised here are not pending in the State Court Action or any other state court proceedings. Moreover, the issue of whether M.O.S. and Fudge provided adequate notice of the State Court Action to Wesco under the terms of the Policy has nothing to do with whether M.O.S. and Fudge are ultimately liable to Burrell for the subject accident, the issue being litigated in the State Court Action. Thus, the development of factual issues in this case is not important to an informed resolution of the State Court Action (or vice versa) (*Ameritas* guidepost 7), nor is the state trial court in a

better position to evaluate the factual issues relevant to this case (*Ameritas* guidepost 8).

As for whether Wesco brought this declaratory judgment action for the purpose of "procedural fencing" (*Ameritas* guidepost 4), Burrell asserts that "[t]his declaratory action was little more than an attempted end run around" the MCS-90 endorsement, complaining that "Wesco's response [to Burrell's counsel's letter demanding payment of the default judgment], instead of paying the judgment, was to file this declaratory action." (Doc. 11, PageID.79). That bare fact does not, by itself, suggest impropriety—indeed, the Supreme Court has recognized that the Declaratory Judgment Act "allow[s] prospective defendants to sue to establish their nonliability…" *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504, 79 S. Ct. 948, 3 L. Ed. 2d 988 (1959). Moreover, there is currently no indication that Wesco is challenging the validity of the MCS-90 endorsement in this action. Instead, Wesco is seeking a determination whether coverage is owed under the Policy's underlying terms—a prerequisite to determining whether the endorsement even comes into play, and as explained above, a determinative factor in whether Wesco could seek reimbursement from its insureds for any payout it may ultimately make to Burrell.

Finally, as to whether there is an alternative remedy that is better or more effective (*Ameritas* guidepost 6), Burrell suggests that the "superior remedy" is to simply let her file suit to collect the default judgment in the event Wesco refuses to pay it, as allowed by the MCS-90 endorsement. *See Yeates*, 584 F.3d at 879 ("The peculiar nature of the MCS–90 endorsement grants the judgment creditor the right

to demand payment directly from the insurer…" (quotation omitted)); (Doc. 11-1, PageID.190 ("It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.")). While this may be Burrell's preferred remedy, she fails to persuade that it would be "better or more effective" than Burrell simply counterclaiming against Wesco in this action to collect on the default judgment, a course of action that would presumably save her a case filing fee. As explained previously, even if Wesco is on the hook for covering Burrell's default judgment, a determination must still be made as to whether coverage is provided under the underlying Policy terms or the MCS-90 endorsement, so it seems more convenient to litigate all of those issues in one action. Moreover, since federal law controls interpretation of the MCS-90 endorsement, *see* n.12, *supra*, this federal forum has a greater interest in resolving that issue should the endorsement come into play. Finally, if the state court ultimately grants the pending motion to vacate the default judgment and allows M.O.S. and Fudge to defend, Burrell will lose her cause of action against Wesco (at least until another final judgment in her favor is entered in the State Court Action), while Wesco, which will presumably continue to provide M.O.S. and Fudge a defense in the State Court Action under its reservation of rights, will still need a determination, at least, of whether it owes a duty to defend under the Policy.[13]

---

[13] In her reply, Burrell argues that, if the default judgment is vacated, then Wesco's

In sum, the *Ameritas* guideposts weigh in favor of retaining this declaratory judgment action, and Burrell has pointed to no other factor or consideration that tips the scale in the opposite direction.

### III.  *Conclusion & Recommendation*

In accordance with the foregoing analysis, and pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72(b)(1), and S.D. Ala. GenLR 72(a)(2)(S), the undersigned **RECOMMENDS** that Burrell's "Motion to Dismiss Declaratory Judgment Petition and First Amended Petition" (Doc. 11) be **DENIED**.

**DONE** this the 13th day of December 2021.

/s/ *Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

declaratory judgment claim on its duty to indemnify will no longer be ripe. First, this Court declines to speculate on whether the default judgment will be vacated. At present, the existence of the default judgment makes Wesco's duty to indemnify claim ripe. Second, as the undersigned has previously explained, such ripeness considerations do not implicate the Court's subject-matter jurisdiction, but are instead discretionary prudential concerns. *Am. Nat'l Prop. & Cas. Co. v. Gulf Coast Aerial, LLC*, No. CV 1:19-00198-KD-N, 2019 WL 4131107, at *2-4 (S.D. Ala. Aug. 29, 2019) (Nelson, M.J.), *report and recommendation adopted*, No. CV 1:19-00198-KD-N, 2019 WL 4725160 (S.D. Ala. Sept. 26, 2019) (DuBose, J.). Here, Wesco's reasons for claiming it owes no duty to defend in the State Court Action are the same as those for why it owes no duty to indemnify—failure of M.O.S. and Fudge to provide notice of the State Court Action. Accordingly, prudential concerns do not counsel in favor of abstaining to hear the duty-to-indemnify issue while deciding the duty-to-defend issue.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1*,* "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.